UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OWEN CARL JACKSON<br><br>Plaintiff,<br><br>v.<br><br>REBECCA PETERSON, Twin Falls County Treasurer<br><br>Defendant. | Case No. 1:23-cv-000422-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant's Motion to Dismiss (Dkt. 23). The Motion is fully briefed, and the Court finds that oral argument is unnecessary. For the reasons described below, the Court will grant the Motion and dismiss the case.

## BACKGROUND

Plaintiff Owen Karl Jackson, appearing pro se, brought this lawsuit against Rebecca Petersen, the Twin Falls County Treasurer. The case stems from Jackson's failure to pay taxes on two properties in Twin Falls. Eventually, after providing notice to Jackson, Petersen issued tax deeds for the delinquent properties in May 2023. The board of county commissioners then sold the properties at public auctions, and Jackson received the proceeds that remained after subtracting his tax debt and other costs related to the delinquency.

Each property sold for significantly less than market value. Jackson owed property taxes for the years 2019 through 2022, worth a total of $11,687 on the first property and $16,571 on the second. The first property had an assessed value of $335,932 but resulted in proceeds of $199,794—a difference of $124,451, after accounting for Jackson's debt. The second property was assessed at $312,154 and resulted in proceeds of $185,326—a difference of $110,257. Jackson alleges that these shortfalls violate the Takings Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment.

Jackson filed his Complaint in September 2023, followed by a First Amended Complaint in April 2024. Petersen responded with a motion for a more definite statement, which the Court granted. Jackson then filed his Second Amended Complaint, which is now at issue. Petersen moves to dismiss the action based on lack of standing and qualified immunity.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "[D]ismissal

may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). However, Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the truth of the allegations. *Twombly*, 550 U.S. at 556.

An additional consideration is that Jackson is appearing *pro se*. "It is an entrenched principle that *pro se* filings 'however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers.'" *United States v. Qazi*, 975 F.3d 989, 991 (9th Cir. 2020) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam)). Although "pro se litigants are bound by the rules of procedure," pleadings should thus be construed liberally in their favor. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

## ANALYSIS

### 1. Standing

Petersen first argues that Jackson lacks standing because there is no causal connection between her actions and Jackson's alleged injury. The Court agrees.

The party invoking federal jurisdiction has the burden of establishing the three elements of standing: "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a

'likelihood' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). To satisfy the "causal connection" requirements, an alleged injury must be "fairly traceable" to the defendant's allegedly unlawful action. *Matsumoto v. Labrador*, 122 F.4th 787, 799 (9th Cir. 2024) (citing *Lujan*, 504 U.S. at 560). "An injury is fairly traceable to a challenged action as long as the links in the proffered chain of causation are not hypothetical or tenuous and remain plausible." *Id.* (quoting *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 943 (9th Cir. 2021)).

Jackson has specified that he does not challenge the underlying tax debt on either property. *Sec. Am. Compl.* at 7, Dkt. 22. Nor does he dispute the propriety of the tax deeds eventually issued by Petersen. *Id.* Rather, his claims concern the public auctions, specifically the acceptance of bids on each property significantly below the alleged market value. As Idaho law makes clear, the power to sell county property, including tax-deeded property, belongs specifically to the board of county commissioners: "A board of county commissioners shall have the power and authority to sell or offer for sale at public auction any real or personal property belonging to the county not necessary for its use." Idaho Code § 31-808(1). For property acquired by tax teed, "[t]he property shall be sold to the highest bidder," and the board must set a minimum bid at least equal to the delinquent taxes,

interest, and costs. *Id.* Though the county treasurer is responsible for collecting property taxes, creating "delinquency entries" for unpaid taxes, and issuing the tax deed, the treasurer is not involved in the auction itself. *See id.* §§ 63-812, 63-1003, 63-1006.

Thus, Jackson's injury is not "fairly traceable" to conduct by Petersen. Although her issuance of the tax deed was a precursor to the challenged conduct, Jackson's acceptance of the validity of that action places her outside of the causal chain. The Court is mindful that Jackson appears pro se, and the pleadings must be construed liberally in his favor. But the pleadings together with the relevant provisions of the Idaho Code show unambiguously that Petersen is the wrong person to sue. If Jackson asserted that Petersen acted unconstitutionally in issuing the tax deed, he would satisfy the standing requirements. In his own words, however, his action is about "the shortfalls of compensation for the properties." *Sec. Am. Compl.* at 7, Dkt. 22. That injury is not "fairly traceable" to Petersen.

For these reasons, Jackson lacks standing for this action, and the lawsuit must be dismissed.

### 2. Qualified Immunity

Qualified immunity provides an independent basis for granting the motion to dismiss.

Qualified immunity shields government officials from civil liability for

rights violations if the right was not "clearly established" at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine seeks to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

To qualify as "clearly established," a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The right must also be established at a reasonable level of specificity: "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 742 (2011)). This does not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* As the Supreme Court summed up, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### A. Ministerial Exception

Qualified immunity does not apply to "ministerial duties," where the official lacks all discretion. *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314-15 (9th Cir. 1989). Jackson argues that Treasurer Petersen's duties in the tax forfeiture process

are ministerial because she simply followed an order from the board of commissioners to issue a tax deed. But this objection frames Petersen's duties far too narrowly. For purposes of qualified immunity, an official's duty must be considered "as a whole." *Id.* at 1315. In the overall tax forfeiture scheme, Petersen exercised significant discretion over responsibilities such as sending tax notices and creating delinquency entries. *See* Idaho Code §§ 63-812, 63-1003. Thus, the ministerial exception is inapplicable.

### B. Takings Clause

Turning to the substance of qualified immunity, Jackson has not cited, and the Court has not found, a single case holding that a delinquent taxpayer has a right under the Takings Clause to the full assessed value of his property. In fact, the Supreme Court recently articulated a far narrower rule: when property is sold to satisfy a tax debt, "a taxpayer is entitled to the surplus in excess of the debt owed." *Tyler v. Hennepin County*, 598 U.S. 631, 642 (2023). The ruling in *Tyler* declared unconstitutional state policies of keeping the surplus value after the sale of a forfeited property. *Id.* at 641-42. *Tyler* did not, however, mandate that a tax-deeded property be sold at its assessed value—effectively, a constitutional rule that the minimum bid at a tax auction be the property's fair market value. Such a requirement is both untethered from the text and history of the Takings Clause, and plainly unworkable due to the administrative burdens it would impose on local

governments.

The cases that Jackson cites deal not with tax deeds but with eminent domain, which presents completely different constitutional considerations because the government seizes property without a delinquency on the part of the owner. *See, e.g.*, *United States v. Gen. Motors Corp.*, 323 U.S. 373 (1945). If Jackson wanted full market value for his properties, he should have paid his taxes.

Accordingly, qualified immunity bars Jackson's Takings Clause claim because there is no clearly established right to receive full market value for a tax-deeded property.

### C. Excessive Fines Clause

Likewise, no precedent clearly establishes Jackson's proposed Eighth Amendment right. He argues that the shortfall in the sales proceeds constitutes an excessive fine. But the shortfall does not even qualify as a fine, much less an excessive fine.

A civil forfeiture is a fine if it "constitutes punishment for an offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998). However, a forfeiture that serves an exclusively remedial purpose is not a fine within the meaning of the Eighth Amendment. *See Austin v. United States*, 509 U.S. 602, 610-11 (1993). In *Tyler*, for example, a Minnesota district court held that a tax forfeiture scheme was remedial, and therefore not a fine, even though the government could keep

proceeds greater than the tax debt. *Tyler v. Hennepin County*, 505 F. Supp. 3d 879, 895-97 (D. Minn. 2020), *rev'd on other grounds*, 598 U.S. 631 (2023). That conclusion, which was affirmed on appeal and not disturbed by the Supreme Court's ultimate ruling, rested on the fact that the statute had no connection to criminal behavior. *Id.* at 897. Rather, it was "a debt-collection system whose primary purpose is plainly remedial: assisting the government in collecting past-due property taxes and compensating the government for the losses caused by the non-payment of property taxes." *Id.*

In the present case, it is even more obvious that Idaho's tax forfeiture scheme is not a fine. The sale of tax deeded properties is designed exclusively to allow the government to collect delinquent property taxes. Of the sale proceeds, the government keeps only the amount of the debt plus costs incurred from nonpayment. All further proceeds are returned to the owner. The shortfall that Jackson complains of is not a sanction, or even an intended effect, but rather an unfortunate consequence of the dynamic at a public auction.

Thus, qualified immunity bars Jackson's Excessive Fines claim because he does not identify a clearly established right violated by Petersen.

Because Jackson lacks standing, and because Petersen has qualified immunity, the Court must grant the Motion to Dismiss.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Dismiss (Dkt. 23) is **GRANTED**.

DATED: March 24, 2025

_____
B. Lynn Winmill
U.S. District Court Judge